Andrew Bakalar, as Administrator of the Estate of
Andro B. Stinar, Deceased, Appellant, v. Andrew
Stinar and Edward Stinar, Appellees.

Gen. No. 8,666.

Opinion filed September 20, 1933.

LLOYD PAINTER, for appellant.

ARTHUR H. SHAY, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion
of the court.

Andrew Bakalar was administrator of the estate of
Andro B. Stinar, deceased, and at the same time was
guardian of the estate of Andrew Stinar and Edward
Stinar, both by appointment of the county court of
Livingston county, Illinois. While acting as such ad-
ministrator and guardian and without any order of the
court therefor, he invested $2,500 in two certain prom-
issory notes, one for the principal sum of $1,500 and
one for the principal sum of $1,000, each executed by

W. C. Ruddy and Margaret E. Ruddy, dated November 1, 1928, and due November 1, 1938. The notes bear interest at the rate of 5½ per cent per annum, payable annually. The payment of these two notes and of three other similar notes, each for the principal sum of $1,000, was secured by a trust deed executed by Ruddy and his wife conveying 80 acres of farm land in Livingston county.

Edward Stinar, the younger of the two minors, became of age on the 8th day of April, 1932. Soon thereafter Andrew Bakalar filed his final account and report as administrator of the estate of Andro B. Stinar, deceased, and therein set forth that he had a balance on hand of $1,763.75, of which $375.53 was due Andrew Stinar and $224.44 was due Edward Stinar. In that account and report the administrator sought to take credit for $2,000 on account of a portion of the two Ruddy notes for $2,500 above referred to, so that instead of receiving the amount due them in cash, the two heirs, Andrew Stinar and Edward Stinar, would be required to receive a pro rata share of the two Ruddy notes. Thereupon, Andrew and Edward Stinar filed objections to the administrator's final account and report, protesting that the investment by the administrator of their share of the funds in said Ruddy notes was unauthorized by the court and illegal and praying that the administrator be required by the order of the court to pay to them in cash the amount due them as shown by the final account and report.

The court entered an order finding that Andrew Bakalar had invested certain funds in his hands as administrator of the estate of Andro B. Stinar, deceased, including the amount of the distributive shares of Andrew Stinar and Edward Stinar as well as the distributive shares of the widow, Susie Stinar, together with certain funds in his hands as guardian of the estates of Andrew Stinar and Edward Stinar,

minors, and certain other funds, in the two Ruddy notes above herein described; that said investment was made without the authority or approval of the court and that the administrator should be and by the order was required to pay to Andrew Stinar and Edward Stinar the respective amounts in cash which the report showed the administrator owed them, together with interest at five per cent per annum from the day the order was entered. From this order the administrator prayed and perfected an appeal to the circuit court.

In the circuit court it appeared that Bakalar had commingled and invested certain funds in his hands as administrator of the estate of Andro B. Stinar, deceased, with funds he held as guardian of the estates of Andrew Stinar and Edward Stinar, minors, together with certain other moneys, in the Ruddy notes and he could not tell which sums invested in those notes represented moneys in his hands as administrator nor what part of it represented moneys in his hands as guardian. It further appeared from the testimony of Bakalar that on November 5, 1932, after the order disapproving his final account and report had been entered in the county court and while his appeal was pending in the circuit court, Bakalar, individually, and as administrator of the estate of Andro B. Stinar, deceased, entered into a contract with W. C. Ruddy and Margaret E. Ruddy and with Cora Fetzer and Mae Ramme and the board of trustees of the police pension fund of the City of Streator, in which it was recited that Ruddy and his wife had executed the notes above herein referred to; that the makers of said notes were indebted thereon in the sum of $5,500, of which Bakalar as administrator held two notes, one for $1,500 and one for $1,000, Cora Fetzer held one note for $1,000, Mae Ramme held one note for $1,000 and the board of trustees of the police pension fund of the City of Streator held one note for $1,000; that said W.

C. Ruddy and wife were unable to pay said indebtedness and, therefore, that said Ruddy and his wife had conveyed the land described in the trust deed by warranty deed to Bakalar as trustee; that the holders of said notes should all release said Ruddy and wife from any and all liability on said notes and that the same should be delivered up to the makers to be canceled; that said Andrew Bakalar, as trustee, should hold the legal title to said real estate until such time as the parties holding at least two-thirds of said indebtedness should request the trustee to convey the premises to a purchaser whom they should secure and in the meantime that the trustee should manage the real estate, lease the same, collect the rents, pay taxes, make repairs and pay the necessary expense of handling the property, including attorney's fees and the sum of $25 a year to himself as commissions. The contract further recited that the Ruddys had failed to pay the general taxes for 1932 and that the parties of the second part should advance to the trustee when requested their pro rata share of such taxes and all other necessary expenses, including certain legal expenses upon the request of the trustee. The contract further provided that Ruddy and his wife should have the option to repurchase the land at any time prior to November 1, 1934.

Appellees did not sign the contract. They are not mentioned therein and it does not provide that they have or ever shall have any interest in the land, the income therefrom or the proceeds of the sale thereof. The contract cancels the notes in which the administrator claims their funds are invested and gives them nothing whatever in lieu thereof.

On the hearing in the circuit court, substantially the same order was entered as was entered in the county court. From that order, Bakalar as administrator appeals to this court.

The appellant in his brief has cited no authority and we have been unable to find any that sustains his position in this case. The administrator had no right to make these loans of $2,000 even though he was authorized to do so by the county court. It is the duty of the administrator to collect all money due the estate and after it is collected to apply the proceeds in discharging the claims and obligations against the estate and after this is done to make a distribution of the balance according to law. This administrator knew, or should have known, that the contract with minors might be disaffirmed, and this is what occurred in this case. The facts in this case are not disputed and it is our opinion that the order of the circuit court was proper and in accordance with the law and facts in the case. The judgment of the circuit court of Livingston county is, therefore, affirmed.

*Judgment affirmed.*